**FILED**

FEB 2 3 2021

CLERK U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

CLARENCE D. BROWN,
   PLAINTIFF,

V                           CIVIL ACTION NO. 1:21CV0177LY

MARSHA MCLANE IN HER OFFICIAL CAPACITY
AS EXECUTIVE DIRECTOR OF THE
TEXAS CIVIL COMMITMENT OFFICE (TCCO)

### PLAINTIFF'S APPLICATION FOR AN EMERGENCY
### PRELIMINARY OR TEMPORARY INJUNCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Clarence D. Brown, and files his Emergency
Application for Preliminary Injunction pursuant Federal Rules Civil
Procedure Rule 65(a). Plaintiff alleges violations of his Constitutional Rights and
seeks declaratory and injunctive relief.

Plaintiff seek declarations that Defendant Marsha McLane as Executive Director
of the Texas Civil Commitment Office (TCCO) has rules, policies, practices, or
procedures that are unconstitutional and violates Plaintiff's substantive due
process rights as guaranteed by the Fourteenth Amendment. Plaintiff seek
declarations that Defendant McLane has a rule, policy, and practice that violate
Plaintiff's freedom of association as guaranteed by the First Amendment to the
United States Constitution. Plaintiff seeks a declaration that Sections
841.082(a)(1)-(2) and 841.0831(b) of the Texas Health and Safety Code are
unconstitutional facially and as applied by Defendant McLane. Plaintiff also
seeks a declaration that Defendant McLane's "Tiered Programming and
Movement Between Tiers" Policy 4.1 is unconstitutional on it's face and violates
Plaintiff's substantive due process rights. Plaintiff seeks a declaration that

Defendant McLane's mandate and reliance upon the polygraph and penile plethysmograph assessments, as conditions of release from the TCCC is unconstitutional and violates the substantive due process clause of the Fourteenth Amendment. Plaintiff alleges that, since he has completed all of the treatment program administered at the Texas Civil Commitment Center (TCCC), he is entitled to an emergency permanent and/or temporary injunction that compels Defendant McLane to transfer Plaintiff to offsite OUTPATIENT TREATMENT AND SUPERVISION. Plaintiff seeks an injunction compelling Defendant McLane to cease and desist all conduct outside her lawful authority.

## EXHAUSTION STATEMENT

In *Patsy v Bd. of Regents,* 457 U.S. 496 (1982) the Supreme Court eliminated the requirement that an injured party exhaust available state court remedies before seeking relief from state action that violates the injured party's constitutional rights.

## PARTIES
## PLAINTIFF

1. Plaintiff is proceeding pro se and is unable to secure counsel to represent him within this matter.

2. Plaintiff is subject to the custody of the Texas Civil Commitment Office by virtue of a Judgment rendered by the 435th District Court of Montgomery County, Texas. Plaintiff is currently confined in the Texas Civil Commitment Center in Littlefield, Texas as an *inpatient*.

3. Plaintiff has completed ALL of the portions of the treatment program offered at the TCCC and is not currently receiving treatment. He is eligible for release to the *outpatient* component of Defendant McLane's Tiered Program but has yet

to be released from total confinement.  See Tex. Health & Safety Code § 841.0831(b).

## DEFENDANT

4.  Marsha McLane (Defendant McLane) is the Executive Director of the Texas Civil Commitment Office ("TCCO").  Defendant McLane is responsible for the overall daily administration and operation of the Health and Safety Code Chapter 841 Civil Commitment Program and all TCCO staff.  Defendant McLane is the ultimate policymaker and decision maker for the TCCO, and this Emergency Application For A Temporary and or Preliminary Injunction is filed against her in her official capacity.  Defendant McLane may be served with legal notice of this suit by service of Complaint and Summons on the Secretary of State pursuant to Federal Rules of Civil Procedure-Rule 4(e)(1); in accordance with §§ 17.026(a) and 101.102 of the Texas Civil Practice and Remedies Code; or, pursuant to Texas Rule Civil Procedure 106.

## JURISDICTION AND VENUE

5.  This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law (policies, practices, procedures, rules, etc.) of rights secured by the Constitution of the United States.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(1)-(a)(4).

6.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)(2) because the Defendant is a Texas resident residing in the Western District, and a substantial part of the events giving rise to this complaint occurred within the Western District (Austin, Texas).

7.  Plaintiff specifically seeks declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.  At all times relevant to this Complaint, Defendant McLane is an employee or agent of the State of Texas, acting in her official capacity under color of state law. The business of this Defendant is conducted in the State of Texas, including the Western District of Texas.

## BACKGROUND

9.  The Texas Legislature first enacted Chapter 841 of the Health and Safety Code (the Code) in 1999, finding that there was a "small but extremely dangerous group of sexually violent predators" who suffered from a "behavioral abnormality" that made them "likely to engage in predatory acts of sexual violence." Tex. Health & Safety Code § 841.001 (West 2010).  The Legislature determined that it was in the best interest of the state to establish a "civil commitment procedure for the long term supervision and treatment" of those deemed to be sexually violent predators.  Id.  At the time the Code was enacted and Plaintiff was ordered into civil commitment under the Code, individuals committed into the civil commitment program were placed in an *outpatient treatment program* and that treatment and supervision was to continue until the person's behavioral abnormality had changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence.  Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4147 (amended 2003, 2015) current version at Tex Health & Safety Code § 841.081 (West, Westlaw through 2015 R. Sess.).

10.  In order to identify those individuals who might be in need of such supervision and treatment, the Code required a repeat sexually violent offender who was scheduled for release from prison to be assessed to determine if he suffered from a *behavioral abnormality* that made him *likely to engage in a*

*predatory act of sexual violence.* (Act of May 30, 1999, 76th Leg., R.S., ch.

1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4147 (amended 2003, 2015) current

version at Tex. Health & Safety Code § 841.081 (West, Westlaw through 2015

R. Sess.). If so identified, the State was given the opportunity to file a petition

seeking to make the individual subject to *civil commitment,* and the individual

was then entitled to a jury trial on the issue of whether he was a sexually violent

predator. (Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex.

Gen. Laws 4122, 4147 (amended 203, 2015) current version at Tex. Health &

Safety Code § 841.081 (West, Westlaw through 2015 R. Sess.) See *Mitchell v*

*State,* 473 S.W.3d 503 (Tex. App. El Paso 2015).

11. The State of Texas sued Plaintiff pursuant to Texas Health & Safety Code

Chapter 841 seeking to have him declared a sexually violent predator and

committed for outpatient treatment and supervision, and that such "outpatient

treatment and supervision" continue until his behavior has changed to the extent

that he is no longer likely to engage in a predatory act of sexual violence. The

suit was assigned to the 435th District Court in Montgomery County, Texas. At

the outset of the proceeding the presiding judge of the 435th District Court,

pursuant to § 841.005, found Plaintiff to be indigent and appointed State Counsel

for Offenders to defend Plaintiff against the claims of the State. State Counsel

for Offenders has, since its initial appointment, represented Plaintiff in his appeal

of the Final Judgment and his biennial reviews.

12. On November 2, 2010, after a jury trial, Plaintiff was declared a sexually

violent predator and the trial court, pursuant to Tex. Health & Safety Code §

841.081, entered a Final Judgment ordering Plaintiff into Texas's Outpatient

Sexually Violent Predator Treatment Program (OSVPTP). The Final judgment

specifically provides that Plaintiff was *civilly committed .... in accordance with Texas Health & Safety Code § 841.081 for out patient treatment and supervision, [which] shall continue until the behavioral abnormality has changed......*

13. In conjunction with the issuance of the Final Judgment, the trial court issued an Order of Commitment, pursuant to Texas Health & Safety Code § 841.082, imposing certain requirements necessary to fulfill the trial court's Final Judgment. Plaintiff was ordered into the custody of the Office of Violent Sex Offender Management (OVSOM), now known as the Texas Civil Commitment Office (TCCO).

14. Plaintiff's Order of Commitment specifically required him to comply with all commitment requirements of Section 841.082 which included: 1) requiring Plaintiff to live in a particular location; 2) prohibiting contact between the Plaintiff and his victims or potential victims; 3) prohibiting Plaintiff's use of alcohol, inhalants, or controlled substances; 4) requiring Plaintiff's participation in and compliance with a particular course of treatment; 5) requiring Plaintiff to submit to tracking and refrain from tampering with the tracking equipment; and 6) prohibiting Plaintiff from changing his residence or leaving the State of Texas without prior court authorization.

15. Plaintiff was released from prison on October 25, 2011 and placed into the physical custody of OVSOM/TCCO to start the Outpatient Sexually Violent Predator Treatment Program (OSVPTP). Plaintiff was transported to El Paso County, Texas to be confined in the Multi-Use Facility (MUF), a facility operated by Avalon Correction, but under contract with the Texas Department of Criminal Justice (TDCJ). Plaintiff was later transferred to the Fort Worth Transitional Facility (FWTC), located in Fort Worth, Texas. This facility as well

was operated by Avalon under contract with TDCJ. After a short period in Fort Worth, Plaintiff was transferred to the Southeast Texas Transitional Center (STTC) located in Houston, Texas. This facility was operated by the GEO Group also under contract with TDCJ.

16. Plaintiff, while residing at the STTC was allowed *unsupervised,* to leave the facility on numerous occasions for activities out in the community. Plaintiff was permitted to utilize public transportation to travel to different locations such as treatment, grocery stores, Wal-marts to shop for food, hygiene, and clothing items. Plaintiff was allowed to use public transportation to travel to the Harris County Law Library and for seeking employment. Also, Plaintiff was allowed to use public transportation to travel to and from the V.A. Hospital located in Houston, Texas.

17. While residing within the "MUF", "FWTC" and "STTC", Plaintiff never committed a criminal act equivalent to a misdemeanor nor felony. While residing within the above facilities, Plaintiff never was accused of a sexually related offense or attempted to abscond.

18. While Plaintiff resided within the STTC, the 84th Texas Legislature made changes to the civil commitment of sexually violent predator program. These changes became effective on June 17, 2015. The changes included eliminating certain requirements listed in former § 841.082(a). The requirements eliminated and relevant to this suit are: 1) prohibiting contact between the Plaintiff and his **potential victims;** and 2) requiring Plaintiff to live in a **particular location,** namely a **residential facility.**

19. On September 1, 2015 Plaintiff was transported to, and remains confined in, the Texas Civil Commitment Center (TCCC) in Littlefield, Texas without a court

order, purportedly for the sole purpose of inpatient treatment.

20. The TCCC is a facility owned by the City of Littlefield and was initially leased to Correct Care, LLC d/b/a CCRS of Texas, LLC (CCRS), a private entity. However, the lease is now between the Management and Training Corporation (MTC), also a private entity, that operates the facility under the disguise of a **treatment center** pursuant to a contract with TCCO.

21. In the five years since Plaintiff's arrival at the TCCC, Plaintiff has successfully completed *Tier 3 and 4 of CCRS's* and Defendant McLane's *inpatient tiered treatment program.* The contract between Defendant McLane and CCRS came to an abrupt halt on March 14, 2019, at which time Plaintiff had long since completed all Tier 4 task and targets, making him eligible for Tier 5, the *outpatient component* of Defendant McLane's tiered program.

22. The June 2015, amendments to Tex. Health & Safety Code, Chapter 841 became effective immediately upon signature of the Governor on June 17, 2015. Section 841.082(a)(4) was renumbered to 841.082(a)(3) and amended in pertinent part from:

> requiring ..... compliance with all *written* requirements imposed by the case manager or otherwise by the office.

to

> "requiring .... compliance with all *written* requirements imposed by the office."

The amendments also included the addition of Section 841.0831 which provides:

> (a) The Office *shall* develop a tiered program for the supervision and treatment of a committed person.
>
> (b) The tiered program *must* provide for the **seamless**

**transition** of a committed person from a total
confinement facility to less restrictive housing and
supervision and eventually release from civil
commitment, based on the person's behavior and
progress in treatment.

23. Plaintiff's tenure in Tier 4, and stay at the TCCC has been extended well

beyond the completed curriculum due to Defendant McLane's biases and total

subjectivity. In light of such biases and subjectivity, Plaintiff is being denied a

*"seamless transition"* from the *total confinement* (to which he has been subjected

since September 2015) to less restrictive housing and supervision and his eventual

release from civil commitment. *Id.*

24. At this **point in time** , Plaintiff is not challenging Defendant McLane's

*NON-COURT-ORDERED Inpatient treatment scheme*  which requires a

FACIALLY VALID ORDER FROM A COURT FOR CONFINEMENT.

## FACTS

25. Attached hereto as Exhibit "A" is Plaintiff's Final judgment.  Attached

hereto as Exhibit "B" is Plaintiff's *original* Order of Commitment

26. On October 21, 2015, after a hearing convened on August 27, 2015, the trial

court signed both an Order On Motion For Placement In Tiered Treatment

Program (Exhibit "C") and an Amended Order of Commitment amending the

*requirements* imposed on Plaintiff.  See Exhibit "D".

27. Neither Exhibits "C" nor "D" are facially valid documents, nor does either

document order Plaintiff into total confinement for **inpatient treatment.**

28. The NEW TIERED PROGRAM began in November 2015.  At that time

Plaintiff was placed in Tier 3.  Plaintiff successfully completed all Tier 3 Tasks

and Targets in August 2016 but could not be promoted to Tier 4 until after taking

and passing a polygraph examination.

29. Plaintiff was promoted to Tier 4 in October 2016. Tier 4 is the management stage of treatment where a client demonstrates that he has internalized his treatment.

30. Plaintiff officially completed all Tier 4 Tasks and Targets in the fall of October 2018 but due Plaintiff receiving an "NO OPINION" on his polygraph examination, Plaintiff could not progress forward to the Advance Group Environment (AGE) dorm until he passed a polygraph.

31. In March 2019, Plaintiff received a "NO DECEPTION" on his polygraph examination. *Id.*

32. On April 29, 2019, Plaintiff was promoted and moved to the AGE dorm. Plaintiff has been denied advancement to **TIER FIVE**, the **outpatient component** of the Tiered Program.

33. Plaintiff successfully completed CCRS's and Defendant McLane's inpatient sex offender treatment program prior to MTC and Defendant McLane's contract for treatment.

34. On May 1, 2019, Defendant McLane and Correct Care Recovery Solutions severed ties, but prior to doing so, Defendant McLane entered into another contract for housing, treatment, and supervision with Management and Training Corporation (MTC) on March 14, 2019.

35. On information and belief, MTC did not have an *offense specific sex offender treatment program* until August 15, 2019. See Exhibit "E" Client Guide Effective August 15, 2019

36. In September 2019, after nearly five months in AGE, Plaintiff was given permission by Defendant McLane to seek housing and employment opportunities

in Lubbock, Texas.

37. On October 18, 2019, Plaintiff with his Case Manager (Chris Greenwalt) was given permission to have a *supervised* conversation on the telephone with Christopher Bourne, a long time friend of Plaintiff's, to see if he would be willing and able to assist Plaintiff in finding housing and employment.

38. On October 19, 2019, Plaintiff contacted Mr. Bourne and he conveyed to Plaintiff that he had a one bedroom house located at 2214 18th St. for rent. The property is a back-house. However, the house in front has college age men renting it. Plaintiff has **no child or male victims** . Mr. Bourne is also the owner of Capitol Pizza restaurants located in Lubbock. Mr. Bourne offered Plaintiff a job starting at $10.00 an hour at the Capitol Pizza located at 2705 26th Street. The potential housing was less than a 30 minute walk from the potential employment.

39. Plaintiff reported all of this information to Case Manager Greenwalt and his therapist. For nearly a month Plaintiff was required by Defendant McLane to complete several safety plans, and Plaintiff complied.

40. In November 2019, while Defendant McLane was at the facility, Plaintiff spoke with the Defendant about the housing and job offer that he had received from Mr. Bourne. Defendant McLane was familiar with Capitol Pizza and its location.

41. In December 2019, while Defendant McLane was at the facility, Plaintiff brought up the housing and employment issue again. Defendant McLane flat out said "No, I am not letting you live and work in a college environment. The persons you offended against were college age students". At this point, Defendant McLane had effectively imposed her unconstitutional *adult safety zone*

on Plaintiff.

42.  Plaintiff wrote a letter to Defendant McLane on December 6, 2019
expressing his concerns about the denial of his housing and employment plans.
See Exhibit "F" Letter Dated December 6, 2019 Community Transitioning.

43.  Defendant McLane rejected the letter, and in doing so, required Plaintiff to
compete an assignment concerning his victimology. See Exhibit "G" Assignment
Dated 12/17/19.  The assignment had to coincide with Defendant McLane's
reasoning and logic, and if not, Plaintiff would be looked upon by Defendant
McLane as not internalizing his treatment.

44.  On February 24, 2020, Plaintiff was once again administered another
polygraph examination to determine whether he was prepared to advance to Tier
Five (Outpatient Tier).  Plaintiff received a no-deception finding.

45.  Both polygraph and penile plethysmograph examinations are good for only
90 days.  If Plaintiff has not been released to Tier Five within the 90 day period,
Plaintiff is subject to further polygraph and PPG examinations to determine his
Tier Five eligibility again.  This unwritten process can go on-and-on until
Plaintiff receives an undesirable result, and will ultimately result in Plaintiff
remaining in the TCCC for *inpatient treatment,* a treatment that he has already
successfully completed.

46.  The PPGs and polygraphs are being utilized by both Defendant McLane
(TCCO) and Management and Training Corporation (MTC) as a condition of
Plaintiff's release to community supervision.

47.  From June 2017 up and through the present, Plaintiff has been required by
Defendant McLane and MTC to submit to the PPG.  Should Plaintiff refuse to
submit to a polygraph and/or PPG Plaintiff will automatically be punished until

both exams are complied with.

48. Prior to moving to AGE, Plaintiff on April 18, 2019, was ordered to submit
to another PPG. As Plaintiff began to move closer to being released to the
community for Tier 5 outpatient treatment, he was ordered to submit to another
PPG on January 23, 2020.

49. On information and belief, a Forensic Psychologist, Dr. Nicholas Edd
reviewed and evaluated both the April 18, 2019 and the January 23, 2020 PPGs.

50. On information and belief, Dr. Edd found and stated that "Compared to his
past physiological results, this performance suggested some notable progress".

51. On information and belief, concerning Plaintiff's January 23, 2020 PPG.
Dr. Edd was of the opinion that "the current results appear to represent
significant progress after reviewing his history and previous PPG exams".

52. On information and belief, Case Manager Luke Oaks in February 2020 had
been placed in charge of finding Plaintiff housing and employment in Lubbock,
Texas.

53. In April 2020, Plaintiff made an inquiry to both Mr. Oaks and Mrs.
Greenwalt as to his housing and employment status. Plaintiff was informed by
both case managers  that Mr. Oaks had secured housing and employment, but it
was now in Defendant McLane's hands.

54. After Plaintiff's April 2020 conversation with case managers Oaks and
Greenwalt, Plaintiff did not hear nothing from Defendant McLane, or the case
managers until the unfortunate death of one of Plaintiff's group members on June
30, 2020.

55. Shortly after the unfortunate passing of Plaintiff's group member, Plaintiff
was contacted by Case Manager Greenwalt, and informed that there would be a

case management meeting with Upper Management from Austin on July 15, 2020
to discuss community transitioning. This meeting never materialized.

56. On July 13, 2020, Plaintiff met with MTC's Clinical Director, Dr. Sean
Casey for an hour long assessment and/or evaluation. On that same afternoon,
Plaintiff discussed his concerns about the evaluation/assessment with his
Treatment Provider, Kristina Luera.

57. Treatment Provider Luera stated "Dr. Casey said that there were **NO RED
FLAGS OR CONCERNS . "**

58. On July 14, 2020, Plaintiff discussed the assessment/evaluation with Case
Manager Greenwalt and she too stated **"EVERYTHING IS GOOD, NOW WE
CAN START MOVING FORWARD WITH GETTING YOU TO THE
COMMUNITY . "**

59. On July 15, 2020, Case Manager Greenwalt text Plaintiff informing him that
there would be a meeting with at 2:00pm. The meeting did not include Upper
Management from Austin. Present was Plaintiff, Case Manager Greenwalt,
Treatment Provider Luera, and Dr. Casey.

60. Dr. Casey stated "Initially, **I FOUND NO CONCERNS OR RED FLAGS**
during my assessment. However, after going back and looking at your **2019
and 2020 penile plethysmograph assessments , I have concerns as to whether
you should be** *RELEASED TO THE COMMUNITY AT THIS TIME .*    Your
scores concerning responses to the *child* testing appear to be a little off and *[I]*
*WOULD LIKE FOR YOU TO TAKE ANOTHER PPG IN AUGUST TO
CLEAR THIS UP* " .

61. Plaintiff explained to Dr. Casey that this particular issue had never been
presented to him by past or current treatment providers as an area of concern due

to Plaintiff's victim pool being adults.

62. On July 17, 2020, Plaintiff was provided with notification from Case Manager Greenwalt that another PPG has been scheduled for August 2020. See Exhibit "H" Notification Letter.

63. The record will indicate that prior to Dr. Casey's involvement, Defendant McLane through Plaintiff's treatment provider, had addressed each area of concern in regards to his arousal patterns. See Exhibits "I" and "J" Assignments dated May 5, 2019 and May 26, 2019.

64. Defendant McLane, as a *[c]ondition of release*, has imposed and is enforcing an **"ADULT SAFETY ZONE" , POLYGRAPH, AND PPG EXAMINATION** against Plaintiff. Plaintiff is not allowed to seek housing in Lubbock, Texas between 4th Street and 34th Street; and between Indiana and "Q" Street. This is nearly a 3 X 3 mile area of Lubbock. Defendant McLane's **CHILD SAFETY ZONE POLICY IS LESS THAN A MILE. (1000 feet).**

65. On information and belief, and in accordance with Section 341.906(b) Limitation On Registered Sex Offenders in General-Law Municipalities, only "the governing body of a *general-law municipality* by ordinance may restrict a registered sex offender from going in, on, or within a specified distance of a child safety zone in the municipality. The City of Lubbock does not have a **CHILD SAFETY ZONE** let alone an **ADULT SAFETY ZONE.**    Defendant McLane does not have the authority to establish an **"ADULT SAFETY ZONE** for the City of Lubbock nor does she have the authority to impose and mandate the *passing of PPGs and polygraphs* as **CONDITIONS OF RELEASE ".**

66. Defendant McLane's *unwritten* policy, practice, and procedure of an **ADULT SAFETY ZONE** violates Plaintiff's substantive due process rights as

guaranteed by the Fourteenth Amendment.

67. Defendant McLane's *unwritten* policy, practice, and procedure of an
**ADULT SAFETY ZONE** violates Plaintiff's freedom of association as
guaranteed by the First Amendment.

68. Section 841.082(a) has never compelled a person to comply with
"**unwritten**" requirements or rules imposed by TCCO (Defendant McLane).
Furthermore, Defendant McLane's implementation of an ADULT SAFETY
ZONE is preempted by law. On June 17, 2015, the Texas Legislature removed
the prohibition of contact with *potential victim* in § 841.082(a)(2), thereby
preempting McLane from restricting contact with college students, or
implementing an *adult safety zone*.

69. Defendant McLane's Policy 4.1 that mandates the taking and passing of
polygraphs and ppgs as a condition of release violate Plaintiff's substantive due
process rights as guaranteed by the Fourteenth Amendment.

70. On June 17, 2015, the Texas Legislature removed the prohibition of
polygraph and penile plethysmograph assessments, and therefore McLane is
preempted by law for imposing both polygraphs and ppgs on Plaintiff.

71. Defendant McLane's rules, policies, practices, and procedures are subjective
involving Plaintiff's housing, employment, and freedom of association.

72. Plaintiff has absolutely **NO SAY** in his employment and housing. Plaintiff
is forced to accept what Defendant McLane chooses for him, and Plaintiff *must*
pay for the housing chosen by Defendant McLane. If Plaintiff is not in
agreement with Defendant McLane's housing and employment arrangements,
Plaintiff will remain confined without receiving the advanced Tier 5 treatment
that is necessary for him to be cured and eventually released from civil
commitment.

73. Defendant McLane and MTC's imposition and mandate of polygraphs and ppgs are subjective. Should Plaintiff not perform well on either assessment, Plaintiff will remain in the TCCC, even though he has successfully completed all *inpatient treatment*.

## DEFENDANT MCLANE'S UNCONSTITUTIONAL IMPLEMENTATION OF AN ADULT SAFETY ZONE

Defendant McLane has implemented an unconstitutional rule, policy, and practice, by implementing an *Adult Safety Zone* which is **subjective** and in violation of Plaintiff's First and Fourteenth Amendment rights. Defendant McLane's Adult Safety rule, policy, and practice prohibits Plaintiff from living and working in the vicinity of **college age potential victims** . Defendant McLane's rule, policy, and practice: (1) are preempted by Texas law; (2) bars constitutionally protected speech; (3) violate Article I § 9 Clause 3 of the United States Constitution; and (4) as an unwritten rule, policy, and practice, which when enforced deprives Plaintiff of his liberty.

Plaintiff contends that Defendant McLane's implementation of an *adult safety zone* in regards to where Plaintiff can live, work, and associate with, is totally subjective and unconstitutional as-applied. Texas Health & Safety Code § 841.082(a)(1)-(a)(2) suffers from this subjectivity defect by prohibiting Plaintiff from living and working in proximity to college age adults. Texas Health & Safety Code §841.082(a)(2) no longer prohibits contact with *potential victims* and the City of Lubbock does not have a **child safety zone,** let alone an **adult safety zone.**

Defendant McLane's unconstitutional implementation of an *Adult Safety Zone* is preempted by both the First and Fourteenth Amendments to the United States

Constitution, as well as by the Texas Legislature.

**First Amendment:**

Plaintiff asserts that the First Amendment has been held to protect both,
"expressive association"--speech, assembly, petition for the redress of grievances,
and the exercise of religion--and intimate association. *Roberts v United States
Jaycees,* 468 U.S. 609, 617-18 (1984). The Fifth Circuit has held that "The right
to intimate association refers to the freedom to enter into and maintain certain
human relationships." *Kipps v Caillier,* 205 F.3d 203, 204-205 (5th Cir. 2000).

Defendant McLane's *Adult Safety Zone* is premised strictly upon Plaintiff's past
victimization of college age women (ages 21, 22, and 24). Without any
imperical study or expert opinion, Defendant McLane has reached the conclusion
that it is harmful for Plaintiff to live and work within the vicinity of college age
adult women. Defendant McLane is not a psychologist, psychiatrist or a sex
offender treatment provider, but she believes that if Plaintiff is in close proximity
of college age women, Plaintiff will begin to fantasize and engage in deviant
behavior. In *Ex Parte Lo,* 424 S.W.3d 10 (Tex. Cr. App. 2013) that Court dealt
with an issue involving sexually explicit communication concerning an adult male
engaging in conversation with a child over the telephone. The Court reached the
conclusion that:

> "The right to think is the beginning of freedom, and speech must be
> protected from the government because speech is the beginning of
> thought. A man's thoughts are his own; he may sit in his armchair
> and think salacious thoughts, murderous thoughts, discriminatory
> thoughts, whatever thoughts he chooses, free from the "thought
> police." It is only when the man gets out of his armchair and acts
> upon his thoughts that the law may intervene."

*Id.* 424 S.W.3d at 25-26.

Defendant McLane's unconstitutional implementation of an *Adult Safety Zone* is preempted by State law. In *State v Jackson,* 376 S.W.2d 341 (Tex. 1964) a case concerning preemption, the Texas Supreme Court held:

> "It is elementary that the Legislature may withdraw from an administrative agency it has created any or all of the powers delegated, for authority to give includes authority to take away. Moreover, delegated powers may be withdrawn by preemption as well as by express declaration. When the legislature acts with respect to a particular matter, the administrative agency may not so act with respect to the matter to nullify the Legislature's action even though the matter be within the agency's regulatory field."

Defendant McLane is doing what the Texas Supreme Court said she could not. The Texas Legislature removed the phrase "potential victim" from § 841.082(a)(2) prohibition; the only requirement now is that Plaintiff not contact a person that he has **victimized.**

**Fourteenth Amendment:**

The Fourteenth Amendment of the United States Constitution provides: "No State shall make or enforce any law (rule) which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law."

Plaintiff asserts that Defendant McLane's implementation and enforcement of her unconstitutional rule, policy, and procedure of an *adult safety zone clearly* interferes with Plaintiff's liberty interest in living, working, and association with adults. In *Zinermon v Burch,* 494 U.S. 113, 125 (1990) the Supreme Court held:

> "The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedure used to implement them.'"

In this instance, no procedures of fairness has been implemented, just subjectiveness, strictly on behalf of Defendant McLane. In *Brown v Taylor,* 911 F.3d 235, 244 (5th Cir. 2018) that Court made it clear that the conditions and duration of Plaintiff's confinement ......... "needed to bear some reasonable relation to supervision and treatment." Chapter 841 of the Texas Health and Safety Code does not ban Plaintiff from living, working, and associating with college age adults.

Further, the Fourteenth Amendment Due Process Clause requires Defendant McLane to provide civilly committed persons, such as Plaintiff, with access to mental health treatment that gives him a realistic opportunity to be cured or to improve the mental conditions for which he was confined. See Youngberg *v Romeo,* 457 U.S. 307, 319-22 (1982). Because Plaintiff has already successfully completed *Defendant McLane's inpatient treatment program Tier 1 - 4 ,* Plaintiff is continuously being confined in an *inpatient setting,* due to not being able to find housing and employment where college age women *are not present.* Plaintiff asserts that this is an impossible task, because Lubbock is a college town. Plaintiff's next course of treatment is *outpatient,* but he is being warehoused at the TCCC, *where he is currently receiving no treatment at all.* Plaintiff should not be warehoused and put out of sight, he must be afforded constitutionally adequate sex offender treatment. The warehousing of Plaintiff without treatment is not reasonably related to the purpose for which he was committed. See *Brown v Taylor,* 911 F.3d 235 (5th Cir. 2018) "Plaintiff sufficiently alleged that the State confined him without treatment for twenty days." Plaintiff is not a prisoner, and by law he is entitled "to more considerate treatment and conditions of confinement than criminals whose conditions of

confinement are designed to punish." *Youngberg,* 457 U.S. at 322.

**Ex Post Facto Clause U.S. Constitution Article I § 9 Clause 3**

With no valid justification, Defendant McLane's *adult safety zone* by way of

Tex. Health & Safety Code § 841.082(a)(1), unconstitutionally unconstitutionally

renders Chapter 841 punitive and imposes punishment on Plaintiff in violation of

the constitutional prohibition of *ex post facto* laws and in violation of the

Fourteenth Amendment.  Section 841.082(a)(1) requires Plaintiff to reside where

instructed by Defendant McLane.  In this instance, Defendant McLane has

mandated that Plaintiff *shall not be allowed to live and work in close proximity*

*of college age adult women*.  The extent to which Defendant McLane utilizes

sections 841.082(a)(1)-(2) to determine where Plaintiff will reside, work and who

Plaintiff can associate with, connotes punishment.  This is punitive, in violation

of the Fourteenth Amendment and is an illegal *ex post facto law*.  Furthermore,

if Plaintiff does not agree to Defendant McLane's *adult safety zone*, Plaintiff

will remain confined in the TCCC, even though he has successfully completed

Defendant McLane's *inpatient treatment scheme.*

The United States Constitution forbids the imposition of *ex post facto* laws,

which act retroactively to punish an individual.  U.S. Const. Art. I., § 9 Cl. 3.

Additionally, the due process clause protects those previously convicted of an

offense from subsequent punishments for that same offense.  *North Carolina v*

*Pearce,* 395 U.S. 711, 717 (1969) overruled *on different grounds by Alabama v*

*Smith,* 490 U.S. 794 (1989).  Plaintiff, a civilly committed patient has already

been punished for his convictions which serves as the basis of the Final Judgment

and civil commitment order issued by the 435th District Court in Montgomery

County, Texas.  See Sec. 841.002(8), 841.003(b).  Therefore, Plaintiff may not

be punished while confined as a civil commitment patient.

In finding Texas's civil commitment statute to be "non-punitive," the Texas Supreme Court focused on the civil nature of mental health commitments as a whole and the specific conditions statutorily imposed on civil commitment patients at the time. *In re Commitment of Fisher,* 164 S.W.3d 637, 648 (Tex. 2005). However, Defendant McLane's reliance upon sections 841.082(a)(1)-(2) to establish an *adult safety zone,* which is being imposed upon Plaintiff, clearly violates the *ex post facto clause* of United States Constitution Art. I, Sec. 9 Cl. 3. Furthermore, should Plaintiff not agree to Defendant McLane's *adult safety zone* scheme, Plaintiff will remain confined in the Texas Civil Commitment Center. This is punishment. The Fourteenth Amendment protects committed persons from being subjected to conditions that are punitive or outside the bounds of professional discretion. *See Youngberg v Romeo,* 457 U.S. 307, 321-22 (1982); *Bell v Wolfish,* 441 U.S. 520, 536 (1979). Furthermore, the Supreme Court in *Bell* found that:

> "If a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-courts may permissively infer that the purpose of the government action is punishment that may not be constitutionally inflicted."

Id. 441 U.S. at 538-39

## Tex. Health & Safety Code §§ 841.082(a)(1); 841.082(a)(2) and 841.0831 Unconstitutionally Delegate Unlimited Authority To Defendant McLane

Defendant McLane's "Tiered Programming and Movement Between Tiers" Policy 4.1 signed by her on April 25, 2018 is unconstitutional and does not provide constitutionally adequate procedural process or a mechanism for a civilly

committed person's (Plaintiff's) *seamless transition* from Defendant McLane's

*inpatient treatment (total confinement) scheme* to Tier Five *(outpatient treatment),*

and thereafter the possibility of release from civil commitment.  Texas Health &

Safety Code § 841.0831 states:

> (a) The office shall develop a tiered program for the
> supervision and treatment of a committed person.
>
> (b) The tiered program **must**  provide for the *seamless*
> *transition* of a committed person from a total
> confinement facility to less restrictive housing and super-
> vision and eventually release from civil commitment,
> based on the person's behavior and progress in
> treatment.

The "Tiered Programming and Movement Between Tiers" Policy 4.1 gives

Defendant McLane the sole authority to determine when and which men will be

released.  Defendant's Policy 4.1 by no means represents a *seamless transition.*

   The Texas Legislature is forbidden from delegating legislative power without

explicit Constitutional authorization of the delegation.  *Tex. Nat'l Guard Armory*

*Bd. v McGraw,* 126 S.W.2d 627, 635 (1939).  Where the Texas Legislature is

authorized to delegate its legislative power to an agency, a delegation is valid

only if it provides sufficient guidance to the agency and sufficiently limits the

agency's discretion.  *Nichols v City of Dallas,* 347 S.W.2d 326, 333 (Tex. Civ.

App. 1961, writ ref'd n.r.e.).  Albeit, there is little doubt that administering a

civil commitment program is exactly the sort of program the Legislature could

not itself perform efficiently, *(Tex. Nat'l Guard Armory Bd. v McGraw,*  126

S.W.2d at 635) in establishing the program, the Legislature is forbidden from

delegating its legislative functions or delegating powers without placing

limitations on Defendant McLane's discretion.  Allowing Defendant McLane to

designate an *adult safety zone* that restricts Plaintiff's housing (§ 841.082(a)(1))
and employment on the basis of *"potential victims"* ( § 841.082(a)(2), compels
Plaintiff's confinement in *inpatient treatment* that he has completed. (§
841.0831(b)).

Texas Health & Safety Code §§ 841.082(a)(1)-(2) and 841.0831(b) fail to put in
place a single meaningful standard to limit Defendant McLane's discretion or to
meaningfully limit her rulemaking powers. Defendant McLane exercises
unfettered discretion to create new conditions of civil commitment, even when
the conditions deprive Plaintiff of his fundamental civil rights. Plaintiff *must*
obey the conditions or face the possibility of never being released from inpatient
treatment, even if he has already successfully completed the curriculum. Failure
to live and work where Defendant McLane specifies would subject Plaintiff to
arbitrary arrests, and convictions for what may amount to completely
non-criminal actions. (Tex. Health & Safety Code § 841.085.) *Thornhill v
Alabama,* 310 U.S. 88, 97-98 (1940). Defendant McLane's discretion is not
guided by any professional therapeutic principles or any legislative framework.

Plaintiff has already successfully completed ALL of the most advanced portion of
the treatment program utilized at the TCCC, which his sex offender treatment
provider has documented for more than a year. The sex offender treatment
provider has stated:

> "Treatment provider is ready to promote him for tier 5 he
> has completed all assignments and continues to demon-
> strate his ability to manage skills that he has learned in
> treatment. Clinically he has met all program requirements
> from a treatment perspective."

See Exhibit "K" Plaintiff's Monthly Clinical Progress Notes 2019 - 2020.

\*Note: Plaintiff's Monthly Clinical Progress Notes for the months of May and

June significantly establishes that Plaintiff is **100% COMPLETE**.   See also

Exhibit "L" where Treatment Provider Luera stated:

> "At this time, it is this treatment provider's opinion that Mr.
> Brown will benefit from continued sex offender treatment
> in community.   It is the recommendation of the treatment
> provider that he is ready for community based living as a
> Tier 5 client on Civil Commitment." (p.g.4).

Furthermore, Plaintiff's Case Manager Chris Greenwalt within her Monthly

Supervision Progress Reports from May 2019 - November 2020 clearly states:

**"He has completed ALL TIER FOUR TASKS AND TARGETS "**.   See

Exhibit "M"  See also Exhibit "N" Task Up Accomplishments and Treatment

Targets.   Therefore, Plaintiff **must** *seamlessly* transition to Tier 5.   See §

841.0831(b).   Because of Defendant McLane's unconstitutional implementation

of an *Adult Safety Zone* , Plaintiff is unable to leave the TCCC (inpatient

treatment) until Defendant McLane finds what she considers the right job and

housing location for Plaintiff.   This is not a *seamless transition*.   Also this is not

an adequate procedure or mechanism that affords Plaintiff with the constitutional

protection required by the Fourteenth Amendment.   In *Kentucky Dep't of Corr. v*

*Thompson,* 490 U.S. 454, 460 (1989) the Supreme Court conducted a two-part

test in determining whether the right to procedural due process was violated and

opine that:

> "We examine procedural due process questions in two steps: the
> first asks whether there exists a liberty or property interest which
> has been interfered with by the State; the second examines
> whether the procedures attendant upon that deprivation were

constitutionally sufficient."

Within this instance, the Fourteenth Amendment makes clear:

> "That no State shall make or enforce any law which
> abridge the privileges or immunities of citizens of the
> United States; nor shall any State deprive any person of
> life, *liberty,* or property, without due process of law."

Section 841.0831(b) creates a liberty interest in a seamless transition to Tier 5.
Because Plaintiff has completed Defendant McLane's inpatient treatment
curriculum, he has a right to be free of the inpatient restraints that Defendant
McLane continues to impose upon him.

In *Foucha v Louisiana,* 504 U.S. 71 (1992) the Supreme Court held "Freedom
from bodily restraint has always been at the core of the liberty protected by the
Due Process Clause." See also *Zadvydas v Davis,* 533 U.S. 678, 690 (2001)
("Freedom from imprisonment-from government custody, detention, or other
forms of physical restraint - lies at the liberty that [the due process clause]
protects."). To be clear, Tex. Health & Safety Code § 841.0831(b) states that
the "tiered program **must** provide for the **seamless transition** of a committed
person from a total confinement facility to less restrictive housing and
supervision......" This has been denied to Plaintiff. Defendant McLane has no
constitutional procedural mechanisms in place to assure the *seamless transition*
that § 841.0831(b) mandates. In fact, Defendant McLane's Policy 4.1 does just
the opposite.

In *In re State of Texas, Relator,* 556 S.W.3d 821 (2018), the Texas Supreme
Court considered claims of this Plaintiff pursuant to Tex. Health and Safety Code
Chapter 841 relating to his having been ordered into the tiered treatment program

after a hearing on the State's Motion for Placement in Tiered Treatment

Program. The Supreme Court noted that:

> "Neither the State's motion nor the trial court's order granting it
> placed Brown in inpatient treatment. The sole purpose of the
> motion was to modify the terms of Brown's civil commitment
> order that conflicted with the Act's 2015 amendments. See Act
> of May 21, 2015, 84th Leg., R.S., ch. 845, § 40, 2015 Tex. Gen. Laws
> 2701, 2712 (directing the trial court to, after notice and a hearing,
> modify a civil commitment requirement that differs from those in
> section 841.082 of the amended Act to conform to that section).

Id. at 830. This is a clear indication that Plaintiff's Amended Order of

Commitment did not grant Defendant McLane the authority to force him to

participate in inpatient treatment. It should be further noted that in *In re State of*

*Texas* the Court also found that "[C]ertainly ...... (Brown) has a liberty interest

in being free from inpatient treatment." Id. at 830. Plaintiff concede *in part* that

Tex. Health & Safety Code § 841.082(a)(1) mandates that he must live or reside

where ordered by Defendant McLane. However, there is nothing within Texas

Health & Safety Code Chapter 841, that allows for a subsequent civil

commitment proceeding, let alone allow Defendant McLane the authority to

confine Plaintiff for inpatient treatment. The authority to compel a change from

outpatient treatment to inpatient treatment rests with the judiciary, and not

Defendant McLane. See *United States v Matta,* 777 F.3d 116, 122 (2nd Cir.

2015) (the decision to place a person in inpatient treatment is a judicial role.). In

*Hitt v McLane, Civ. Act. No. 1:17-CV-00289-SS* , concerning the authority to

place in total confinement for inpatient treatment, the district court held:

> "McLane has failed to present evidence showing that the TCCO
> possessed the legal authority to take Hitt into custody. McLane
> argues Hitt was properly taken into custody because Texas

Health and Safety Code § 841.082(a)(1) and Hitt's amended order
of civil commitment require Hitt to reside where instructed by the
TCCO.......Though the TCCO may possess the power to designate Hitt's
residence, it does not follow that the TCCO also possess the power
to forcibly relocate Hitt to the designated residence without legal
process.  Neither Hitt's amended order of civil commitment or the
SVP Act provide the TCCO may seize and confine a civil committee
at the TCCC simply because the TCCO has changed the civil
committee's designated residence."

Contrary to Plaintiff's confinement in the TCCC, the Fifth Circuit in *Brown v*

*Taylor,* 911 F.3d 235 (5th Cir. 2018) noted that:

> "In 2015, "to insure the continued constitutionality of
> the Texas civil commitment program," the Texas
> Legislature overhauled the SVPA. *Id.*  The SVPA *no*
> *longer mandates confinement* but simply "requir[es]
> the person reside where instructed by the office." Tex.
> Health & Safety Code Ann. § 841.082(a)(1) (West 2017).
> *Emphasis Added.*

Plaintiff's confinement to inpatient treatment without a valid judgment or order of

civil commitment for inpatient treatment from a court with competent jurisdiction

violate the due process clause of the Fourteenth Amendment because Appellant's

confinement did not take place pursuant to proper procedures and evidentiary

standards.

Plaintiff participated in Defendant McLane's *inpatient treatment scheme* in

**good-faith,** believing that her *new* program would be better than any other

program previously offered by her predecessors, but this is not the case.  In

*Collins v City of Harker Heights,* 503 U.S. 115, 125 (1992) the Supreme Court

held "Procedural Due Process mandates that any government action depriving a

person of life, liberty, or property be implemented in a fair manner."

Unfortunately, Defendant McLane has not complied with this concept.

Nearly fifty years ago the Supreme Court in *Jackson v Indiana,* 406 U.S. 715, 738 (1972) held "At the least, due process requires that the nature and duration of a commitment bear some reasonable relation to the purpose for which the individual is committed." The law requires that Plaintiff be "afforded more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" *Id. Youngberg,* 457 U.S. at 322.

## DEFENDANT MCLANE'S UNCONSTITUTIONAL IMPOSITION AND MANDATE OF POLYGRAPHS AND PENILE PLETHYSMOGRAPHS AS CONDITIONS OF RELEASE

For more than a year, Plaintiff had been awaiting his release to the community. Plaintiff had been ordered PPGs on April 18, 2019 and January 23, 2020. According to past and current treatment providers, including Defendant McLane, both of these assessments were valid because they showed substantial progress. However, between March 2020 and June 2020, Dr. Casey became the Clinical Director for MTC. It was not until Dr. Casey became involved, that there were now issues with Plaintiff's previous PPGs. Plaintiff contends that Defendant McLane utilized the PPGs as a *tactic* to halt his release to the community. If Defendant McLane deliberately allowed this issue to get this far without providing corrective measures, then she has *failed to treat,* and denied Plaintiff with *constitutionally adequate sex offender treatment* that gives him a *realistic opportunity to be released to the community*. The Fourteenth Amendment guarantees Plaintiff constitutionally adequate sex offender treatment. The denial of constitutionally adequate sex offender treatment, will prevail only if the penile plethysmograph has been mandated by the Texas Legislature, and ordered by the

On August 27, 2020, Plaintiff, once again was required by Defendant McLane to submit to another PPG, as a *condition of release* from the TCCC. This was Plaintiff's fourth PPG assessment within a three year period. Prior to Defendant McLane confining Plaintiff in the TCCC, Plaintiff was only required to submit to PPGs every two years.

A penile plethysmograph is a device that measures changes in penile volume. It is used to detect fluctuations in the amount of blood coursing through a person's penis. Plaintiff contends that the PPG is intrusive, dehumananizing and very unpleasant.

Although Plaintiff is not a parolee or probationer, Defendant McLane and the treating entity, MTC, employ the PPG to measure Plaintiff's erectile responses to visual and auditory stimuli. At the direction of Defendant McLane, Plaintiff has been subject of three PPGs within the past fifteen months.

Plaintiff contends that nowhere within his Amended Order of Commitment does it state that Plaintiff must submit to ppg examinations. On June 17, 2015, the Texas Legislature repealed the penile plethysmograph and polygraphs from the statute, no longer making it a requirement. See Senate Bill 746 Section 13. Plaintiff contends that Defendant McLane and MTC are preempted from requiring Plaintiff to submit to PPGs and polygraphs without judiciary involvement.

Plaintiff offers that Defendant McLane as the final decisionmaker for the TCCO [a non-judicial officer] is exercising her discretion to make Plaintiff's liberty itself contingent upon her subjective determination of an adequate PPG and polygraph. Plaintiff contends that, as used the penile plethysmograph involves an "especially" significant liberty interest and therefore it requires a specific finding

by the judiciary. In Texas, only a trial court (not a regular citizen) may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.

Defendant McLane's reliance on the PPG and polygraphs as "condition of Plaintiff's release" to the community is unconstitutional. Defendant McLane is relying on the PPG assessments as evidence of future sexual misconduct, rather than as a tool strictly for treatment and monitorization.

Plaintiff **DOES NOT HAVE CHILD VICTIMS**, nor has he shown any sexual proclivities towards children in his PPGs. Plaintiff contends that Defendant McLane's rule, policy, practice, and procedure of mandating PPGs and polygraphs as a "condition of release" is unconstitutional.

## ARGUMENT AND AUTHORITIES

Defendant McLane has implemented an unconstitutional rule, policy, practice, and procedure that requires Plaintiff to submit to penile plethysmograph and polygraph examination prior to being released from the Texas Civil Commitment Center. Such implementation is subjective and in violation of Plaintiff's Fourteenth Amendment right.

Defendant McLane's implementation of a PPG and polygraph examination and mandating them as a "condition" prior to Plaintiff's release to the community is unconstitutional and preempted by State law. Defendant McLane as the Executive Director for TCCO has only the authority expressly conferred by the Texas Legislature. See *Public Util. Comm'n v City Public Serv. Bd.,* 53 S.W.3d 310, 316 (Tex. 2001). The legislature never expressly granted Defendant McLane the authority to prescribe or regulate penile plethysmograph and polygraph examinations to Plaintiff. As a matter of fact, Senate Bill 746

Section 13 modified the requirements to be imposed on committed persons

pursuant to § 841.082(a), and an SVP submitting to the PPG and polygraph are

no longer requirements, they were removed (repealed) by the legislature.

In *State v Jackson,* 376 S.W.2d 341 (Tex. 1964) a case concerning preemption,

the Texas Supreme Court held:

> "It is elementary that the Legislature may withdraw from an
> administrative agency it has created any or all of the powers
> delegated, for authority to give includes authority to take away.
> Moreover, delegated powers may be withdrawn by preemption as
> well as by express declaration.  When the legislature acts with
> respect to a particular matter, the administrative agency may not so
> act with respect to the matter to nullify the Legislature's action even
> though the matter be within the agency's regulatory field."

Plaintiff insist that Defendant McLane's unconstitutional implementation of the

PPG and polygraph as a condition prior to his release to the community violates

the due process clause.

The Fourteenth Amendment's Due Process Clause provides that "no State shall

...... deprive any person of life, liberty, or property, without due process of law.

This language contains a substantive component, one that "bars certain arbitrary,

wrongful government actions 'regardless of the fairness of the procedures used to

implement them.'" *Zinermon v Burch,* 494 U.S. 113, 125 (1990).  Because

Plaintiff is under an order for civil commitment, it is imperative "that [his]

conditions and duration of confinement ..... bear some reasonable relation to the

purpose for which he is committed." See *Brown v Taylor,* 911 F.3d, 235, 243

(5th Cir. 2018).

In this instance, Plaintiff contends that by Defendant McLane mandating the PPG

and polygraph as conditions for release, without statutory and/or judicial

authority, violate his right to substantive due process. Plaintiff, repeatedly have complied with the administering of PPG and polygraph. Defendant McLane requires Plaintiff to subject himself to a procedure (PPG) that inflict substantial humiliation by having the size and rigidity of his penis measured and monitored under the threat of punishment or not advancing in treatment, for failing to cooperate. Although Plaintiff is labeled a sexually violent predator, he maintains his humanity. Plaintiff retains his right to substantive due process, even under conditions of his civil commitment order. *United States v Myers,* 426 F.3d 117, 125-26 & n.8 (2nd Cir. 2005). Plaintiff offers that based on each of his experiences with PPG, it gets worse each and every time. Furthermore, this process last nearly two hours. A PPG examination is not the run-of-the-mill medical procedure. Nor is it anywhere akin to a cavity search or strip search in which both state and federal courts have found them to be invasive. In *United States v Weber,* 451 F.3d 552, 563 (9th Cir. 2006) that court held "plethysmography implicates a particularly significant liberty interest." The Supreme Court in *Rochin v California,* 342 U.S. 165, 169 (1952) found that substantive due process prohibits the government from invading personal immunities that are "implicit in the concept of ordered liberty and so rooted in the traditions and conscience of our people as to be ranked as fundamental."

Plaintiff contends that within both state and federal judiciary, only courts are tasked with imposing supervisory conditions upon a person. In *Mitchell v State,* 420 S.W.3d 448, 449 (Tex. App.-Houston 2014) it was held there that "the trial court may impose "any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." The court in *Mitchell,* found that (under the prior statute) the

legislature permitted the trial court to impose plethysmograph polygraph testing based on Texas Health & Safety Code § 841.083 where it provides that same treatment plan for a person civilly committed. Id. 420 S.W.3d at 451. However, plethysmograph and polygraph examinations are no longer part of SVP the statute. In *Morales v State,* 541 S.W.2d 443, 445 (Tex. Crim. App. 1976) a trial court imposed a condition on a probationer prohibiting association with any person younger than *Morales.* Under the version of the Code of Criminal Procedure active at that time, a judge had no authority to impose conditions beyond statutory probation conditions. See *Russell v State,* 685 S.W.2d 413, 417 (Tex. App.-San Antonio 1985) aff'd by 702 S.W.2d 617 (Tex. Crim. App. 1985). In a notable opinion, the Court ruled that the trial court exceeded its authority and deleted the offending terms from Morale's probation order. *Morales,* 541 S.W.2d at 445.

Within the federal judiciary, conditions of release are prohibited when imposed by [s]upervisory agencies. In *United States v Morin,* 832 F.3d 513 (5th Cir. 2015) that Court found that it was impermissilble for a private therapist to impose conditions on a person. This case simply proposes that any and all matters involving conditions of release must be imposed or approved by the judiciary. Id at 518. See *U.S. v Esparza,* 552 F.3d 1088, 1091 (9th Cir. 2009) finding that it was impermissible for the trial court to leave to the discretion of the probation officer to determine if *Esparza* would be inpatient or outpatient.

Because the penile plethysmograph involves an "especially" significant liberty interest, it therefore requires a specific finding by the judiciary. See *Weber,* 451 F.3d at 561. If this much protection is afforded to probationers and parolees, then certainly a person civilly committed for the sole purpose of treatment

deserves just as much protection if not more. Plaintiff is not a prisoner, and by law he is entitled "to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v Romeo,* 457 U.S. 307, 321-22 (1982).

## RELIEF REQUESTED

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff hereby request an Emergency Temporary Restraining Order and Preliminary Injunction, to expire not earlier than final disposition of Plaintiff's claims, that prohibits Defendant McLane, her agents, successors, assignees, or anyone acting in concert with her from:

(a) placing Plaintiff in any type of confinement setting that does not comport with the strict dictates of Plaintiff's Final Judgment to Outpatient Treatment; *See Brown v Taylor,* 911 F.3d 235 (5th Cir. 2018) "the statute no longer mandate confinement:; *In re State of Texas,* 556 S.W.3d 821, 830 (2018), "Neither the State's motion nor the trial court's order granting it placed Brown in inpatient treatment....";

(b) subject Plaintiff to retaliation for exercising his constitutional rights; and

(c) engaging in any action tended, or likely, to cause Plaintiff a tier reduction to keep him from transitioning into the community.

Plaintiff request that the preliminary injunction and temporary restraining order be granted without the requirement of a bond. Although, Fed. R. Civ. P. - 65(c) generally requires the grant of preliminary injunction be conditioned upon the giving of a security by the applicant, the amount of security required, in any, is a matter for the discretion of the District Court. See *Corrigan Dispatch DC. v Casa Guzman, S.A.,* 569 F.2d 300, 303 (5th Cir. 1978). Plaintiff respectfully

submits that where, as here, the equitable relief sought is for the purpose of enforcing fundamental constitutional rights, the imposition of any bond requirement would impose an undue hardship on Plaintiff and egregiously interfere with remedial federal legislation enacted to protect such rights, no bond requirement should be imposed. See *Crowley v Local No. 82, Furniture & Piano,* 679 F.2d 978, 1000 (1st Cir. 1982) (following line of decisions wherein "no bond is required in suits to enforce important federal rights or public interests.").

## APPLICABLE LAW ON PRELIMINARY INJUNCTION

The considerations governing the issuance of a preliminary injunction, under the decision law of the United States Supreme Court, are that the Plaintiff must demonstrate:

> *a substantial likelihood of success on the merits of his claims;

> *a substantial threat Plaintiff will suffer irreparable injury if the preliminary injunction is not granted;

> *that the threatened injury to Plaintiff outweighs the threatened harm the preliminary injunction may do to the Defendant; and

> *that granting the preliminary injunction will not disserve the public interest.

See *Ammoco Prod. Co. v Village of Gamble,*   480 U.S. 531, 536n.12 (1987)

## PART ONE:

## There Is A Substantial Likelihood That Plaintiff Will Succeed On The Merits

Plaintiff has alleged, and binding authority of the United States Supreme Court,

holds (1) no person shall be deprived of liberty without due process; (2) due

process requires that the nature and duration of a commitment bear some

*reasonable relation*to the purpose for which the individual was committed; (3)

Plaintiff *must* be afforded more considerate treatment and conditions of

confinement than a criminal whose conditions of confinement are designed to

punish; (4) a person involuntarily civilly committed for the sole purpose of

treatment cannot be subjected to punishment; (5) Plaintiff is entitled to freedom

from bodily restraint; and (6) Plaintiff has the right to expressive

association--speech, assembly, .... and the right to intimate associations.

The Texas Supreme Court has clearly established that neither Plaintiff's Amended

Order of Commitment or the Trial Court's Order Placing Plaintiff in Tiered

Treatment, **placed Plaintiff in INPATIENT TREATMENT.**

Defendant McLane's decision to implement an unconstitutional *adult safety zone*

***without legislative or judicial authority*** *infringes* upon Plaintiff's First and

Fourteenth Amendment rights. Because Plaintiff cannot meet Defendant

McLane's mandated adult safety zone, Plaintiff must remain confined to *inpatient*

*treatment*, even though he has completed Defendant McLane's **INPATIENT**

**TIERED TREATMENT SCHEME.**

**Plaintiff's Fourteenth Amendment Due Process Claim:**

In *Foucha v Louisiana,* 504 U.S. 71 (1992) the Supreme Court held "Freedom

from bodily restraint has always been at the core of the liberty protected by the

Due Process Clause." See also *Zadvydas v Davis,* 533 U.S. 678, 690 (2001)

("Freedom from imprisonment-from government custody, detention, or other

forms of physical restraint - lies at the liberty that [the due process clause]

protects."). The Fourteenth Amendment of the United States Constitution

provides: "No State shall make or enforce any law (rule) which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law."

In this instance, Plaintiff is not seeking a release from his Final Judgment which ordered him to be civilly committed pursuant to Tex. Health & Safety Code § 841.081. Although Plaintiff was civilly committed to *outpatient treatment* pursuant to a Final Judgment from the 435th District Court, Defendant McLane insists that her authority to determine where Plaintiff may reside, gives her the power to compel Plaintiff to participate in inpatient treatment. Furthermore, now that Plaintiff has completed such program, Defendant McLane refuses to release him. The law concerning how a civilly committed person should be confined and treated has been clearly established within this Circuit and the United States Supreme Court for more than four decades. *See Jackson v Indiana,* 406 U.S. 715, 738 (1972) "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual was committed."

In this instance, Plaintiff has completed the necessary requirements to return back to OUTPATIENT TREATMENT, **AN OUTPATIENT TREATMENT PROGRAM THAT IS CONSISTENT WITH HIS FINAL JUDGMENT.**

In *In re State of Texas, Relator,* 556 S.W.3d 821, 830 (2018), the Texas Supreme Court considered claims of this Plaintiff pursuant to Tex. Health and Safety Code Chapter 841 relating to his having been ordered into the tiered treatment program after a hearing on the State's Motion for Placement in Tiered Treatment Program. The Texas Supreme Court noted that:

"Neither the State's motion nor the trial court's order granting it

placed Brown in inpatient treatment. The sole purpose of the
motion was to modify the terms of Brown's civil commitment
order that conflicted with the Act's 2015 amendments. See Act
of May 21, 2015, 84th Leg., R.S., ch. 845, § 40, 2015 Tex. Gen. Laws
2701, 2702 (directing the trial court to, after notice and a hearing,
modify a civil commitment requirement that differs from those in
section 841.082 of the amended Act to conform to that section).

Contrary to Plaintiff's confinement in the TCCC, the Fifth Circuit in *Brown v
Taylor,* 911 F.3d 235 (5th Cir. 2018) noted that:

> "In 2015, "to ensure the continued constitutionality of
> the Texas civil commitment program," the Texas
> Legislature overhauled the SVPA. *Id.* The SVPA *no longer
> mandates confinement* but simply "requir[es] the person
> to reside where instructed by the office." Tex. Health
> and Safety Code Ann. § 841.082(a)(1) (West 2017).
> *Emphasis Added*

.

Simply put, due to Defendant McLane's unconstitutional *adult safety zone,* until
Defendant McLane or her agents find Plaintiff what they believe to be
appropriate housing and employment, Plaintiff will remain in *total confinement,*
where he is unable to advance to the next phase of his treatment, and Plaintiff's
chances of being released from civil commitment decreases daily. This is
punishment.

The Fourteenth Amendment protects committed persons from being subjected to
conditions that are punitive or outside the bounds of professional discretion. *See
Youngberg v Romeo,* 457 U.S. 307, 321-22 (1982); *Bell v Wolfish,* 441 U.S.
520, 536 (1979). Furthermore, the Supreme Court in *Bell* found that :

> "If a restriction or condition is not reasonably related to a legitimate
> goal-if it is arbitrary or purposeless-courts may permissively infer
> that the purpose of the governmental action is *punishment* that may
> not be constitutionally inflicted." *Emphasis Added.*

Id. 441 U.S. at 538-39.

## Plaintiff's Claims Under the First Amendment

Plaintiff is not on any type of criminal supervision and for Defendant McLane to impose an *adult safety zone* that infringes upon Plaintiff's First Amendment right to freedom of association involving where he lives, work, and whom he can associate with, is unconstitutional. In *Packingham v North Carolina*, 137 S. Ct. 1730 (2017) the Supreme Court addressed a North Carolina statute that prohibited registered sex offenders from accessing commercial social-networking cites, even after their sentences were completed. Id 137 S. Ct. at 1733-34, 1737. The Supreme Court held that the North Carolina statute was unconstitutional under the First Amendment. It appears that the Supreme Court's main concern was how the State could impose a severe restriction on persons who had served their sentences and were no longer subject to the supervision of the criminal justice system. *Id.* 1737 (explaining that "[o]f importance" to the Court was "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system".

Plaintiff asserts that he has a substantial likelihood of success on the merits of his claims because: (1) he is being deprived of his liberty without due process; (2) the nature and duration of Plaintiff's continued confinement in the TCCC after the completion of a NON-COURT-ORDERED INPATIENT TREATMENT PROGRAM, **does not bear a reasonable relation to the purpose for which he was civilly committed;** (3) because Plaintiff was civilly committed for the sole purpose of treatment, he cannot be subjected to punishment; and (4) Plaintiff's

freedom of association is protected by the First Amendment.

**Substantial Threat Exists That Plaintiff Will Suffer Imminent Irreparable Injury**

Plaintiff asserts that he will continue to be subjected to irreparable injury if an injunction is not granted and his harm clearly outweighs any harm to Defendant McLane. Plaintiff asserts that his right to *freedom of association* is a constitutional right protected by the First Amendment. Further, Plaintiff's right to constitutionally adequate sex offender treatment and the right to due process is protected by the Fourteenth Amendment. In Deerfield *Med. Ctr. v City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B. Nov. 1981) found that "the violation of constitutional rights for even a minimal period of time constitutes an irreparable injury which justifies the granting of a preliminary injunction." (citing *Elrod v Burns,* 427 U.S. 347, 373 (1976). *See also Deleon v Perry,* 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014), aff'd *sum nom. Deleon v Abbott,* 791 F.3d 619 (5th Cir. 2015) ("Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law.") and *Mitchell v Cumo,* 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

On September 1, 2015, without legislative or judicial authority, Defendant McLane ORDERED Plaintiff to be placed into *total confinement* for her *inpatient treatment scheme* pursuant to Tex. Health & Safety Code § 841.0831(a)(b). Section 841.0831(b) states that "the tiered program **must** provide for the **seamless transition** of a committed person from a total confinement facility to less restrictive housing and supervision...... to eventual release from civil commitment."

For more than a year, Plaintiff has remained at the TCCC in Defendant McLane's *inpatient treatment program* without being afforded the opportunity to advance further in his treatment. Plaintiff successfully completed "CCRS's" treatment curriculum in April 2019. On May 1, 2019, CCRS and Defendant McLane terminated their treatment agreement, and MTC and Defendant McLane entered into another treatment agreement. Plaintiff is not being required to complete "MTC's" treatment curriculum, and therefore he is not receiving any treatment, *other than Defendant McLane's imposed special assignments* .

In September 2019, Plaintiff was given permission by Defendant McLane to seek housing and employment opportunities in Lubbock, Texas. On October 18, 2019, Plaintiff with his Case Manager (Chris Greenwalt) was given permission to have a *supervised* conversation on the telephone with Christopher Bourne, a long time friend of Plaintiff's, to see if he would be willing and able to assist Plaintiff in finding housing and employment..

On October 19, 2019, Plaintiff contacted Mr. Bourne and he conveyed that he had a one-bedroom house located at 2214 18th Street for rent. The front house was rented by college age male students. Plaintiff has no child or male victims. Mr. Bourne offered Plaintiff a job at Captitol Pizza, located 2705 26th St. (less than 30 minute walk from residence). Plaintiff reported all information to case manager, therapist, and Defendant McLane. Defendant McLane ORDERED Plaintiff to complete several safety plans for potential housing and employment. In December 2019, while Defendant McLane was at the facility, Plaintiff spoke with Defendant McLane about the housing and employment, and she immediately rejected the plans due to the persons that Plaintiff victimized, were college age adult women. Defendant McLane imposed her unconstitutional *adult safety zone*

against Plaintiff. Defendant McLane's *adult safety zone* is the basis of Plaintiff's continued confinement in the TCCC, and due to the *Adult Safety Zone* rule, Plaintiff will continue to suffer irreparable injury.

The Fourteenth Amendment provides that "No State shall make or enforce any law (rule) which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law." In this instance, Plaintiff will suffer imminent irreparable injury should he remain in Defendant McLane's *inpatient treatment scheme (absent a facially valid order )* due to Defendant McLane implementing an unconstitutional *adult safety zone. Cf. Porter v Epps,* 659 F.3d 440, 445 (5th Cir. 2011) a "clearly established right to timely release from prison" and explicitly found that "[d]etention of a prisoner for over "thirty days beyond the expiration of his sentence in the absence of a *facially valid court order or warrant* constitutes a deprivation of due process." *(*Quoting *Douthit v Jones,* 619 F.2d 527, 532 (5th Cir. 1980); *U.S. v Stewart,* 2009 Lexis 45760 (S.D. Houston 2009) (finding that a court order is needed before placing a person in a halfway house); and *Ex Parte Barnett,* 600 S.W.2d 252 (Tex. 1980) ("A commitment order is the warrant, process or order by which a court directs its ministerial officer to take custody of a person."). There has been *no court order issued ordering* Defendant McLane to confine and keep Plaintiff in the TCCC. Furthermore, it is unconstitutional for Plaintiff to remain warehoused in the TCCC without receiving the necessary treatment that gives him a *realistic opportunity to be cured or to improve his mental condition*.

As previously shown, Plaintiff has completed Defendant McLane's INPATIENT TIERED TREATMENT PROGRAM. In *Wyatt v Aderholt,* 503 F.2d 1305,

1308 (5th Cir. 1974) the Court held persons "Involuntarily committed through non criminal procedures and without the constitutional protections that are afforded defendants in criminal proceedings" are "committed for treatment purposes" and "unquestionably have a *constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition.*" citation omitted. *Cf. Sharp v Weston,* 233 F.3d 1166, 1172 (9th Cir. 2000)("The Fourteenth Amendment Due Process Clause requires states to provide civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."; and *Allison v Snyder,* 332 F.3d 1076, 1080 (7th Cir. 2003)("At a minimum, "civil detainees are entitled to non-punitive programs designed using the exercise of *professional judgment.*"

In *Brown v Taylor,* 911 F.3d 235 (5th Cir. 2018) a case involving this same Plaintiff, the Court found that Plaintiff had sufficiently alleged that the Defendant confined him without treatment for twenty days. *Id.* Currently, Plaintiff has gone more than a year *without* being provided individualized offense specific sex offender treatment. Albeit, Plaintiff attends weekly groups, but he is not receiving *individualized offense specific sex offender treatment* that provides him with a realistic opportunity to be cured and released. Plaintiff, merely provides *feedback* to others. "At the least, due process requires that the nature and duration of a commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v Indiana,*406 U.S. at 738. Plaintiff asserts that he has no other remedy at law, and that no amount of money can correct the harm already suffered. In light of Defendant McLane's unconstitutional *adult safety zone,* Plaintiff will *"continue"* to *suffer irreparable*

*injury* and in the course of doing so, not receive a realistic opportunity to be cured and released.

**Plaintiff's Potential Injury Outweighs Any Threatened Harm To Defendant McLane's Legitimate Interest**

Any claim by the Defendant that granting the Emergency Application for a Temporary and or Preliminary Injunction requested would pose cognizable harm to the Defendant's legitimate governmental interests is belied by clearly established law, as determined by the United States Supreme Court's decision in cases listed above.

At this juncture, it is not so much Defendant McLane placing Plaintiff in *total confinement for non-court ordered inpatient treatment* with which Plaintiff takes issue. What has brought about this Injunction, is that Defendant McLane is refusing to release Plaintiff from *total confinement* after he has successfully completed her *inpatient treatment* curriculum. As previously shown above, "The Fourteenth Amendment's Due Process Clause requires states to provide civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." Furthermore, due process demands that conditions and duration of Plaintiff's confinement need to bear some reasonable relation to his supervision and treatment. In *Bell v Wolfish,* 441 U.S. 520, 536 (1979) the Supreme Court found that:

> "If a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-courts may permissively infer that the purpose of the governmental action is *punishment* that may not be constitutionally inflicted." Emphasis *Added.*

Id. 441 U.S. at 538-39.

Hopefully, Defendant McLane does not have an interest in legitimizing a punishment scheme that involves warehousing Plaintiff, now that he has completed treatment. That would be punitive. Plaintiff's potential injury outweighs any threatened harm to Defendant McLane's *legitimate interests*. Defendant McLane's only legitimate interest should be in following the law, as it is spelled out by both the United States and Texas Constitutions; and that is to promulgate rules, policies, practices, and procedures that are consistent with providing civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. Furthermore, to make sure that the conditions and duration of Plaintiff's confinement bear some reasonable relation to the purpose in which he was civilly committed. Plaintiff asserts that there is *no harm* to Defendant McLane releasing Plaintiff into the community. In doing so, Plaintiff (1) *must* register every 30 days with the Lubbock Police Department, (2) wear a global positioning satellite 24 hours a day/7 days a week; (3) submit to alcohol and drug testing; (4) submit to polygraph and PPG examinations; (5) submit to a home search by one or more of Defendant McLane's agents, at any time of the day or night; (6) monitor all of Plaintiff's phone calls, and can search and seize all incoming and outgoing *text messages;* (7) Plaintiff is subject to *home confinement 24 hours a day, seven days a week,* unless otherwise approved by Defendant McLane to leave his residence; and (8) Plaintiff **must** continue to progress in treatment. Within all that is listed above, Defendant McLane can suffer no harm from the granting of the preliminary injunction.

**Granting Temporary Relief Will Not Disserve The Public Interest**

Plaintiff contends that granting his Emergency Application For a Temporary and

or Preliminary Injunction will not disserve the public's interest. This program
within less than **five years** has had two vendors; (CCRS) who has had some
success in treating and releasing sex offenders in Florida, and (MTC), strictly a
prison for profit organization that has **ABSOLUTELY NO EXPERIENCE IN
PROVIDING INDIVIDUALIZED OFFENSE SPECIFIC SEX OFFENDER
TREATMENT** .

It is the public's interest to ensure that the Texas Health & Safety Code §
841.0831(b) requirement the tiered program to provide for the **seamless
transition** of a committed person from a total confinement facility to less
restrictive housing and supervision be complied with. Plaintiff, reiterates that he
has completed all the treatment provided at the TCCC. The Texas Supreme
Court in *In re State of Texas,* has spoken to the fact that Plaintiff "has a liberty
interest in being free from inpatient treatment." Id. 556 S.W.3d at 830. In as
much, the Fifth Circuit recognizes that the new SVPA no longer **"mandates"**
confinement. See *Brown v Taylor,* 911 F.3d 235 (5th Cir. 2018).

It is in the interest of the public to ensure that Defendant McLane does not
infringe upon any citizen's First Amendment right to freedom of association
involving where he lives, work, and with whom he can associate.

Plaintiff is not on any type of criminal supervision and for Defendant McLane to
impose an *adult safety zone* that imposes upon Plaintiff's First Amendment right
is unconstitutional. In *Packingham v North Carolina,* 137 S. Ct. 1730 (2017) the
Supreme Court addressed a North Carolina statute that prohibited registered sex
offenders from accessing commercial social-networking cites, even after their
sentences were completed. Id 137 S. Ct. at 1733-34, 1737. The Supreme Court
held that the North Carolina statute was unconstitutional under the First

Amendment. It appears that the Supreme Court's main concern was how the

State could impose a severe restriction on persons who had served their sentences

and were no longer subject to the supervision of the criminal justice system. *Id.*

1737 (explaining that "[o]f importance" to the Court was "the troubling fact that

the law imposes severe restrictions on persons who already have served their

sentence and are no longer subject to the supervision of the criminal justice

system".

Defendant McLane is preempted from making law, especially law that has

already been eliminated by the Texas Legislature. In Regards to Tex. Health &

Safety Code § 841.082(a)(1), just because Plaintiff must reside where ordered by

Defendant McLane, does not mean that she has the legislative authority to place

him in total confinement for inpatient treatment. "Neither the State's motion nor

the trial court's order granting it placed Brown in inpatient treatment. Id *In re*

*State,* 556 S.W.3d at 830. As to Tex. Health & Safety Code § 841.082(a)(2), it

is a disservice to the public to know that Defendant McLane's *adult safety zone*

*implicates* contact with "potential victims", a prohibition that was removed by the

Legislature in 2015 and therefore is unconstitutional (compare current and prior

versions of § 841.082(a)(2)). The law only requires that Plaintiff **not contact a**

**victim.** In *State v Jackson,* 376 S.W.2d 341 (Tex. 1964) a case concerning

preemption, the Texas Supreme Court held:

> "It is elementary that the Legislature may withdraw from an
> administrative agency it has created any or all of the powers
> delegated, for authority to give includes authority to take away.
> Moreover, delegated powers may be withdrawn by preemption
> as well as by express declaration. When the legislature acts with
> respect to a particular matter, the administrative agency may not
> so act with respect to the matter as to nullify the Legislature's action
> even though the matter be with the agency's general regulatory

field."

Plaintiff offers that public interest is served by the enforcement of 'his' right to
constitutionally adequate sex offender treatment, that is *reasonably related to the
purpose in which Plaintiff was committed.*  Furthermore, it is always in the
public interest to prevent the violation of Plaintiff's constitutional rights.
Further, it is in the public interest to prevent Defendant McLane from violating
the requirements of federal law. *Valle del Sol Inc. v Whiting,* 732 F.3d 1006,
1029 (9th Cir. 2013).  In *Elrod v Burns,* 427 U.S. 347, 373 (1976) the Supreme
Court has held: "That as a matter of law, the deprivation of a constitutional right
*unquestionably constitutes irreparable injury." Emphasis Added.*

Public interest is best served when it ensures tthat Defendant McLane complies
with the judgments placing persons under her control, including orders placing
the person in "outpatient treatment".

## PART 2

## There Is A Substantial Likelihood That Plaintiff Will Succeed On The Merits

Plaintiff has alleged, and binding authority of the United Supreme Court holds
(1) no person shall be deprived of liberty without due process; (2) substantive due
process prohibits the government from invading personal immunities that are
"implicit in the concept or ordered liberty and so rooted in the traditions and
conscience ........... as fundamental; (3) Plaintiff must be afforded more
considerate treatment and conditions of confinement than a criminal whose
conditions of confinement are designed to punish; and (4) a person involuntarily
civilly committed for the sole purpose of treatment cannot be subjected to
punishment.  The Texas Supreme Court has found that preemption prohibits an

agency's practice or procedure that has been remanded or repealed by the

Legislature.

Defendant McLane's decision to implement and mandate penile plethysmograph

and polygraph examinations as a *condition of release* (Plaintiff's release) from the

Texas Civil Commitment Center is unconstitutional. If Plaintiff refuses to submit

to the PPG and polygraph, he is subject to punishment, which consist of a drop in

tier(s) and loss of privileges.

In *Foucha v Louisiana,* 504 U.S. 71 (1992) the Supreme Court held "Freedom

from bodily restraint has always been at the core of the liberty protected by the

Due Process Clause." See also *Zadvydas v Davis,* 533 U.S. 678, 690 (2001)

("Freedom from imprisonment-from government custody, detention, or other

forms of physical restraint - lies at the liberty that [the due process clause]

protects."). The Fourteenth Amendment of the United States Constitution

provides: "No State shall make or enforce any law (rule) which shall abridge the

privileges or immunities of citizens of the United States; nor shall any State

deprive any person of life, liberty, or property without due process of law."

Under both state and federal law, *conditions of release* cannot be imposed by an

supervisory agency, which in this case is a normal citizen, Defendant McLane.

In *United States v Morin,* 832 F.3d 513 (5th Cir. 2015) that Court found that it

was impermissilble for a private therapist to impose conditions on a person

without judicial review. This case stands for the proposition that any and all

matters involving conditions of release **must** be viewed by the judiciary. Id at

518. See *U.S. v Esparza,* 552 F.3d 1088, 1091 (9th Cir. 2009) finding that it

was impermissible for the trial court to leave the discretion up to a probation

officer to determine if *Esparza* would be inpatient or outpatient.

Mandating PPGs and polygraph examinations as a condition of release amounts to
punishment. The Fourteenth Amendment protects committed persons from being
subjected to conditions that are punitive. *Youngberg v Romeo,* 457 U.S. 307,
321-22 (1982); *Bell v Wolfish,* 441 U.S. 520, 536 (1979). In this instance
mandating penile plethysmograph and polygraph examinations are clearly outside
Defendant McLane's discretion, having been preempted by the Legislature's
removal of PPGs and polygraphs from the statute.

Defendant McLane's implementation of PPGs and polygraph examinations as
conditions of release is unconstitutional and preempted by state law. Defendant
McLane as the Executive Director for TCCO has only the authority expressly
conferred by the Texas Legislature. See *Public Util. Comm'n v City Public
Serv. Bd.,* 53 S.W.3d 310, 316 (Tex. 2001). At no point has the Legislature
expressly granted Defendant McLane the authority to mandate PPGs and
polygraph examinations as a condition of release. Senate Bill 746 § 13 modified
the requirements to be imposed on committed persons pursuant to § 841.082(a),
and a committed person submitting to PPGs and polygraphs are no longer
requirements. In *State v Jackson,* 376 S.W.2d 341 (Tex. 1964) a preemption
case, the Texas Supreme Court held:

> "It is elementary that the Legislature may withdraw from an
> administrative agency it has created any or all of the powers
> delegated, for authority to give includes authority to take
> away. Moreover, delegated powers may be withdrawn by
> preemption as well as express declaration. When the
> Legislature acts with respect to a particular matter, the
> administrative agency may not so act with respect to the
> matter to nullify the Legislature's action even though the
> matter be within the agency's regulatory field."

The legislature did not expressly grant Defendant McLane authorization to utilize penile plethysmograph and polygraph as a **condition of release** for a committed person.

In light of the facts, Defendant McLane's mandated sex offender treatment program does not bear some reasonable relation to the purpose in which Plaintiff was committed. See *Jackson v Indiana,* 406 U.S. 715, 738 (1972) "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual was committed." Penile plethysmograph and polygraph examinations are no longer required by the Texas Legislature, and even if they still were, Defendant McLane is not authorized to mandate the PPG, which is an invasive humiliating test, as a condition of Plaintiff's release. There is a substantial likelihood that Plaintiff will succeed on the merits.

**Substantial Threat Exists That Plaintiff Will Suffer Imminent Irreparable Injury**

Plaintiff asserts that he will continue to be subjected to irreparable injury if an injunction is not granted and his harm clearly outweighs any harm to Defendant McLane. Plaintiff asserts that his right to be free of an intrusive and invasive procedure such as the penile plethysmograph, especially without the authorization of the judiciary is a clear violation of Plaintiff's substantive due process rights. In *Deerfield Med. Ctr. v City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B. Nov. 1981) found that "the violation of constitutional rights for even a minimal period of time constitutes an irreparable injury which justifies the granting of a preliminary injunction." (citing *Elrod v Burns,* 427 U.S. 347, 373 (1976). See also *Deleon v Perry,* 975 F. Supp. 2d 632, 663 (W.D. Tex. 2014),

aff'd summon. *Deleon v Abbott,* 791 F.3d 619 (5th Cir. 2015) ("Federal courts
at all levels have recognized that violation of constitutional rights constitutes
irreparable harm as a matter of law.") and *Mitchell v Cumo,* 748 F.2d 804, 806
(2d Cir. 1984) ("When an alleged deprivation of a constitutional right is
involved, most courts hold that no further showing of irreparable injury is
necessary.").

   As previously discussed, Plaintiff has remained at the TCCC in Defendant
McLane's inpatient treatment program without being afforded the opportunity to
advance further in his treatment.  Plaintiff successfully completed the treatment
curriculum in April 2019.  After more than a year, Defendant McLane, once
again imposed another one her informal unconstitutional rules as a condition of
Plaintiff's release.

   The Fourteenth Amendment provides that "No State shall make or enforce any
law (written or unwritten policy) which shall abridge the privileges or immunities
of citizens of the United States; no shall any State deprive any person of life,
liberty, or property without due process of law.  In this instance, Plaintiff will
continue to suffer imminent irreparable injury should he be required to submit to
further penile plethysmograph and polygraph exams as conditions of release to
community supervision.  See *United States v Morin,* 832 F.3d 513, 518 (5th Cir.
2015) (it is impermissible for a private therapist to impose conditions of release
on a person without judicial review.); *U.S. v Esparza,* 552 F.3d 1088, 1091 (9th
Cir. 2009) (it is impermissible for a trial court to leave the discretion up to
probation officer to determine if an individual should be placed in inpatient
treatment or outpatient treatment.) and *United States v Weber,* 451 F.3d 552,
563 (9th Cir. 2006) (holding that "Plethysmography implicates a particularly

significant liberty interest.").

As offered below, its been stated that Plaintiff has made significant improvement within each PPG exam that he has been required to take. Plaintiff completed the *special assignments* required by Defendant McLane more than a year ago concerning the PPG. It was unconstitutional of Dr. Casey to state on July 15, 2020 that if Plaintiff's scores did not increase in the area involving children, that Plaintiff would not be permitted release from the TCCC. *Id Morin,* 832 F.3d at 518 (it is impermissible for a private therapist to impose conditions of release on a person without judicial review.) In *Brown v Taylor,* 911 F.3d 235 (5th Cir. 2018) a case involving this same Plaintiff, the Court found that Plaintiff had sufficiently alleged that the Defendant confined him without treatment for twenty days. *Id.* Confinement without treatment also constitutes irreparable injury. In this case, Plaintiff will continue to suffer imminent irreparable injury because the PPG and polygraphs are being required as a condition of release for Plaintiff, and he has not been treated for over a year. Furthermore, the PPG and polygraph examinations are being used as an evidentiary tools by Defendant McLane. Therefore, should Plaintiff be subject to further PPGs and polgygraph examinations, and fails, he will remain confined in the TCCC. "At the least, due process requires that the nature and duration of a commitment bear some reasonable relation to the purpose for which the individual is committed." *Id Jackson v Indiana,* 406 U.S. at 738. Plaintiff asserts that he has no other remedy at law, and that no amount of money can correct the harm already suffered. In light of Defendant McLane's unconstitutional PPG and polygraph requirements as a condition of release, and Plaintiff not receiving adequate treatment for over a year, Plaintiff will continue to suffer irreparable injury and in the course of doing

so, not receive a realistic opportunity to be cured and released.

**Plaintiff's Potential Injury Outweighs Any Threatened Harm To Defendant McLane's Legitimate Interest**

Any claim by the Defendant that granting the Emergency Application for a Temporary and or Preliminary Injunction requested would pose cognizable harm to the Defendant's legitimate governmental interests is belied by clearly established law, as determined by the United States Supreme Court.

The Supreme Court in *Rochin v California,* 342 U.S. 165, 169 (1952) found that substantive due process prohibits the government from invading personal immunities that are "implicit in the concept of ordered liberty and so rooted in the traditions and conscience of our people as to be ranked as fundamental." The record establish the fact that Plaintiff's offenses were committed against adult women and not children. To subject Plaintiff to further confinement in the TCCC for the sole purpose of administering constant and continuous penile plethysmograph exams, and thereafter rely upon the results as a pre-condition of Plaintiff's release is punitive.

In *Bell v Wolfish,* 441 U.S. 520, 536 (1979) the Supreme Court held:

"if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-courts may permissively infer that the purpose of the governmental action is *punishment* that may not be constitutionally inflicted." *Emphasis Added.*

Defendant McLane should have **NO** interest in legitimizing and mandating penile plethysmograph exams as a condition of release when she is preempted from doing so. Especially since the legislature has struck it from the law as one

of Plaintiff's requirements. Plaintiff's potential injury outweighs any threatened

harm to Defendant McLane's legitimate interests. Plaintiff has successfully

completed his inpatient treatment, but Defendant McLane continues to utilize

road blocks, to keep Plaintiff confined, rather than release him to community

supervison so that he can complete his civil commitment treatment. See Tex.

Health & Safety Code § 841.0831 (less restrictive housing and eventual release

from civil commitment).

**Granting Temporary Relief Will Not Disserve The Public Interest**

Plaintiff contends that granting his Emergency Application For a Temporary and

or Preliminary Injunction will not disserve the public's interest.

It is in the interest of the public to ensure that Defendant McLane does not

infringed upon any citizen's substantive due process right as guaranteed by the

Fourteenth Amendment. It is in the interest of the public to ensure that treatment

tools such as the penile plethysmograph and polygraph exams are not misused for

the purpose of determining the likelihood of re-offending. The penile

plethysmograph exam is not the run-of-the mill medical procedure. It is invasive

and intrusive "Plethysmography implicates a particularly significant liberty

interest." *United States v Weber,* 451 F.3d 552, 563 (9th Cir. 2006).

It is the public's interest to ensure that Defendant McLane understands that

"substantive due process prohibits the government from invading personal

immunities that are implicit in the concept of ordered liberty and so rooted in the

traditions and conscience of our people as to be ranked as fundamental." *Rochin,*

342 U.S. at 169.

It is in the interest of the public to ensure that Defendant McLane, as a normal

citizen does not possess the authority to impose PPGs and polygraph exams as a

condition of release for Plaintiff. See *United States v Morin,* 832 F.3d 513, 518

(5th Cir. 2015) (finding that it was impermissible for a private therapist to impose

conditions of release on a person without judicial review.); Cf. *United States v*

*Esparza,* 552 F.3d 1088, 1091 (9th Cir. 2009) (it was impermissible for the trial

court to leave the discretion up to probation officer to determine if a person

would be inpatient or outpatient."). Because penile plethysmograph involves an

"especially" significant liberty interest, it therefore requires a specific finding by

the judiciary.

   It is the public's interest to ensure that Defendant McLane follow the law and not

make her own laws. Defendant McLane's implementation of the PPG and

polygraph, and mandating them as a *conditions of release* is unconstitutional and

preempted by State law. It is the public's interest to ensure that Defendant

McLane exercise only the authority expressly conferred by the Texas Legislature.

The legislature excluded penile plethysmograph and polygraphs from Chapter 841

of the Texas Health & Safety Code. Senate Bill 746 Section 13 modified the

requirements to be imposed on committed persons pursuant to § 841.082(a), and

requiring a committed person to submit to PPGs and polygraphs are no longer

one of the requirements. See *State v Jackson,* 376 S.W.2d 341 (Tex. 1964)

stating that:

>          "It is elementary that the Legislature may withdraw from an
>          administrative agency it has created any or all of the powers
>          delegated, for authority to give includes authority to take
>          away. Moreover, delegated powers may be withdrawn by
>          preemption as well as by express declaration. When the
>          legislature acts with respect to a particular matter, the
>          administrative agency may not so act with respect to the
>          matter to nullify the Legislature's action even though the
>          matter be within the agency's regulatory field."

Plaintiff offers that public interest is served by the enforcement of 'his' right to constitutionally adequate sex offender treatment, that is reasonably related to the purpose in which Plaintiff was committed. It is always in the public interest to prevent the violation of Plaintiff's constitutional rights. It is also in the public interest to prevent Defendant McLane from violating the requirements of federal law. See *Valle del Sol. Inc. v Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013).

### CONCLUSION

Plaintiff has shown (1) a substantial likelihood of success on the merits; (2) a substantial threat that Plaintiff will suffer irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to Plaintiff outweighs the threatened harm the preliminary injunction may do to the Defendant; and (4) granting the preliminary injunction will not disserve the public interest.

WHEREFORE **PREMISE CONSIDERED,** Plaintiff hereby respectfully pray that this Honorable Court in the interest of justice grant the relief requested and any other relief deemed appropriate and necessary.

Respectfully Submitted;

Clarence D. Brown - Pro se
Texas Civil Commitment Center
2600 S. Sunset Ave
Littlefield, Texas 79339
Ph# 806-654-4557





## UNSWORN DECLARATION

i, Clarence D. Brown hereby declare under the penalty of perjury that the

foregoing Plaintiff's Application For an Emergency Preliminary or Temporary

Injunction is true and correct.  This unsworn declaration is provided pursuant to

28 U.S.C. § 1746 and signed on this the _18th_ day of January, 2021.

Clarence D. Brown Pro se
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Clarence Brown's Plaintiff's Application for an Emergency Preliminary or Temporary Injunction, was on this the 19th day of February, 2021 served, via email, on the following parties as follows:

Marsha McLane
Executive Director of the Texas Civil Commitment Office
c/o Greg Cox
General Counsel of the Texas Civil Commitment Ofice
email: Gregg.Cox@tcco.texas.gov

William A. Marshall